Filed 9/30/24  ZK Oakland Properties v. Golden Stream Properties CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ZK OAKLAND PROPERTIES, LLC,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GOLDEN STREAM PROPERTIES, LLC,<br><br>    Defendant and Appellant. | A165450<br><br>(Alameda County Super. Ct. No. 22CV007693) |

Defendant Golden Stream Properties, LLC (GSP), appeals the trial court's grant of summary judgment in favor of plaintiff ZK Oakland Properties, LLC (ZK), in an unlawful detainer case concerning a commercial tenancy.  ZK served GSP with multiple notices to quit alleging that GSP breached the lease by failing to pay rent, engaging in unlicensed activities on the premises, subleasing the premises without authorization, making unapproved alterations, failing to maintain its corporate status, and permitting nuisance and waste at the premises.  After a tentative ruling denied ZK's summary judgment motion on the grounds that there were triable issues of fact regarding three of the notices, ZK voluntarily dismissed those allegations.  Following the hearing and supplemental briefing, the court granted the motion.  We affirm.

1

## BACKGROUND

### I. ZK Leases Premises to GSP

ZK leased commercial property (the premises) to GSP for a term of ten years. The lease required monthly rent payments and specified late payment fees. The lease also required any modifications be "only in writing, signed by the Parties in interest at the time of the modification."

Both parties understood GSP intended to use the premises for licensed cannabis cultivation. The lease required GSP to operate "in strict compliance with state laws" as well as "federal and state tax requirements" and applicable "zoning laws, city ordinances, [and] consumer product laws." The lease also specified GSP would take possession of the premises in its " 'as is, where is, and with all faults' condition." Additionally, because "[t]he Parties acknowledge[d] that the Premises [was] not in compliance" with the legal requirements for cannabis cultivation, the lease expressly made GSP responsible for the cost of all necessary improvements.

The lease also forbade GSP from subletting or assigning the premises "without [ZK's] prior written consent," which in turn ZK would not "unreasonably" withhold, condition, or delay. The lease further stated that any unauthorized sublet or assignment shall, at ZK's option, be a "a non-curable Breach without the necessity of any notice and grace period." This would allow ZK to either terminate the lease or increase the monthly base rent.

### II. ZK Initiates Unlawful Detainer Action

Over two years later, ZK served GSP with seven 3-day notices to quit. Two of the notices alleged GSP failed to pay the last three months of rent and sought payment for the base rent as well as contractual late payment fees. The other notices related to assertions of unauthorized subletting, unlicensed

2

cannabis cultivation, GSP's failure to maintain its corporate status, unpermitted alterations, and waste.

Two weeks later, ZK filed an unlawful detainer action alleging seven separate breaches of the lease, premised on the same allegations in the 3-day notices. GSP answered. After abandoning a motion to strike GSP's answer, ZK filed a motion for summary judgment. Specifically, ZK requested summary judgment on "either and/or both" the three-day notices to quit or pay rent and "on any of the <u>five</u> additional 3-Day Notices to Quit."

In opposition to the motion, GSP argued each notice either presented a disputed material fact or was legally meritless. GSP contended that ZK orally agreed to a rent credit; that ZK knew of GSP's subtenancy; that GSP cured its corporate status; and that there were disputes of material facts concerning GSP's compliance with local ordinances in operating a cannabis business and whether GSP could cure a state licensing defect. In its reply briefing, ZK did not readdress GSP's alleged failure to maintain its corporate status, unpermitted alterations, and waste. Instead, ZK focused on its asserted claims of unpaid rent, unpermitted business activities, and unauthorized subletting.

The trial court denied ZK's motion in a tentative opinion. It found triable issues of fact regarding ZK's allegations of unapproved alterations, waste, and failure to maintain corporate status. But it also stated no triable issues of fact existed regarding GSP's breach of the lease by failing to pay rent, operating a cannabis business without necessary permits, and subletting the premises without ZK's consent.

### III. Trial Court Grants Summary Judgment After ZK Dismisses Certain Causes of Action

The day before the trial court heard arguments on the motion, ZK dismissed the three causes of action for which the court found triable issues

of fact. ZK then filed a supplemental brief in support of its motion, informing the court of the dismissals and urging the court to grant summary judgment on the remaining four 3-day notices.

Following the hearing, the trial court took the matter under submission but allowed GSP to file a supplemental brief. GSP did so, arguing ZK improperly added new facts and law in its supplemental briefing and faulting ZK for not making a motion for summary adjudication on each separate claim. GSP further contended that the declaration it submitted attesting to an oral rent credit agreement created a factual dispute concerning ZK's allegation of unpaid rent, and GSP again asserted that there were disputed issues of fact regarding ZK's actual knowledge of GSP's subletting.

The trial court granted ZK's motion. Reiterating the findings in its tentative ruling, the court held that there were no triable issues regarding the asserted unpaid rent, late payment fees, unlicensed cannabis cultivation, or unauthorized subletting. It held ZK's dismissed claims to be moot.

Following entry of judgment, the trial court awarded ZK possession of the premises and money damages. GSP appealed.

## DISCUSSION

### I. Legal Standards

The Unlawful Detainer Act (Code Civ. Proc., §§ 1159–1179a)[1] enumerates the elements of, and governs the procedures for, an unlawful detainer cause of action. (*Stancil v. Superior Court* (2021) 11 Cal.5th 381, 389–390 (*Stancil*).) While the "procedures governing a motion for summary judgment in an unlawful detainer action are streamlined," the basis for granting or denying such a motion remains the same. (*Borden v. Stiles*

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

4

(2023) 92 Cal.App.5th 337, 344.)  We review a summary judgment order *de novo*.  (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.)

In doing so, we apply the same three-step analysis required of the trial court.  (*Olson v. La Jolla Neurological Associates* (2022) 85 Cal.App.5th 723, 733.)  We first examine the pleadings to identify the elements of the causes of action; and we next evaluate whether the moving party's evidence satisfies its burden of proof.  (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1602.)

If the first two analytical steps are satisfied, we determine whether the opposing party demonstrated the existence of a triable material factual issue.  (*Brantley v. Pisaro*, *supra*, 42 Cal.App.4th at p. 1602; see also § 437c, subd. (c) [motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact"].)  In this last step, " '[w]e liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Lonicki v. Sutter Health Central*, *supra*, 43 Cal.4th at p. 206.)  But we only consider admissible evidence set forth in the parties' moving and opposition papers.  (*Ibid.*)

## II.    Trial Court Did Not Improperly Adjudicate Issues

GSP first contends that, despite ZK only filing a motion for summary judgment without seeking summary adjudication in the alternative, the trial court improperly adjudicated issues.  This argument fails.

ZK asserted one cause of action (unlawful detainer) premised on multiple, independently sufficient, allegations that GSP breached the lease.  Each alleged breach was specified in the 3-day notices that ZK served on GSP, and ZK's briefing in support of its summary judgment motion explicitly argued it was "entitled to judgment as a matter of law on . . . *either* of the two 3-Day Notices to Pay Rent or Quit" or "on any of the five additional 3-Day

5

Notices to Quit." Certainly, ZK could have sought summary adjudication based on any alleged breach. (See *Blue Mountain Enterprises, LLC. v. Owen* (2022) 74 Cal.App.5th 537, 549 ["to the extent the FAC's first cause of action alleged separate and distinct contractual violations, Blue Mountain was entitled to present a motion for summary adjudication as to any alleged violation"].) But ZK sought summary judgment based on each breach because any of those violations, as alleged, would be sufficient for summary judgment. (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795 ["California has consistently applied the 'primary rights' theory, under which the invasion of one primary right gives rise to a single cause of action"].)

Following the trial court's tentative opinion, however, ZK dismissed what it described as its "causes of action for 'Tenant Suspension by the CA SOS', 'OMC Violations[,]' and 'Waste'." GSP did not contest — either before the trial court or on appeal — that these allegations were improperly dismissed from the complaint.

Moreover, prior to the motion hearing, ZK gave notice to the trial court and GSP that it had dismissed those allegations, and the court afforded GSP an opportunity to file supplemental briefing on the issue. (Cf. *Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 70 [courts may grant summary judgment on grounds "not explicitly tendered by the moving party" so long as the opposing party is "provided an opportunity to respond"].) Thus, the court did not err in granting the motion after it found there were no triable issues of fact regarding the remaining notices at issue.

Contrary to GSP's contention, ZK's supplemental briefing did not introduce new facts; it merely dropped three factual allegations. The facts otherwise remained the same. ZK sought possession and damages for GSP's alleged breach of lease having failed to cure: (1) the 3-day notice to pay rent

6

or quit based on nonpayment of base rent; (2) the 3-day notice to pay rent or quit based on late rent fees; (3) the 3-day notice to quit based on unlicensed cannabis cultivation; and (4) the 3-day notice to quit based on unauthorized subletting. Indeed, a lack of triable issues of fact on any of those claims would be sufficient to grant summary judgment.

GSP's cited case law is unavailing. *Gonzales v. Superior Court* (1987) 189 Cal.App.3d 1542, 1545 is inapposite because, in the instant case, the trial court did not grant an oral motion for summary adjudication on several factual issues. Rather, the trial court found no triable issues of fact as to any remaining claims in the complaint after extensive briefing. And, unlike in *Homestead Savings v. Superior Court* (1986) 179 Cal.App.3d 494, 496, the court did not adjudicate "certain subissues not specifically targeted by the motion for summary adjudication." At all times, ZK's summary judgment motion specifically targeted the four 3-day notices on which the court ruled. Thus, there is no danger that GSP " 'may have decided to raise only one triable issue of fact in order to defeat the motion, without intending to concede the other issues.' " (*Id.* at p. 498.)

In sum, the trial court did not erroneously adjudicate issues when it granted ZK's summary judgment motion.

### III.   No Triable Issue of Fact Regarding Unpaid Rent

GSP next argues there were triable issues of material fact regarding the four notices at issue. The first notice was based on nonpayment of rent. As we explain below, there is no triable issue of fact on this notice, and therefore ZK is entitled to judgment as a matter of law.

A tenant is guilty of unlawful detainer for nonpayment of rent where: "(1) the tenant is in possession of the premises; (2) that possession is without permission; (3) the tenant is in default for nonpayment of rent; (4) the tenant

7

has been properly served with a written three-day notice; and (5) the default continues after the three-day notice period has elapsed." (*Kruger v. Reyes* (2014) 232 Cal.App.4th Supp. 10, 16; see *Stancil, supra,* 11 Cal.5th at p. 395; § 1161, subd. (2) ["tenant . . . is guilty of unlawful detainer:  [¶] 2.  When the tenant continues in possession . . . without the permission of the landlord . . . after default in the payment of rent, pursuant to the lease . . . and three days' notice . . . in writing"].)

Undisputed evidence establishes each element.  The terms of the lease required GSP to pay ZK $130,474 in rent on the first of the month from December 2021 to February 2022; a cumulative sum of $391,422.  GSP tacitly admitted, and never disputed, that it failed to make those rent payments.  It is further uncontested that ZK served GSP with a 3-day notice to pay rent or quit two weeks before filing its unlawful detainer action.  GSP never asserted that the notice lacked any of the requirements laid out in section 1161, subdivision (2).  Finally, GSP admitted it failed to quit possession of the premises by the notice's deadline.  As a matter of law, therefore, GSP is guilty of unlawful detainer.  (*Stancil, supra,* 11 Cal.5th at p. 395.)

To avoid this conclusion, GSP argues there was an "independent collateral contract" for rent credit.  The sole declaration attesting to the purported oral contract merely states that ZK agreed to a rent credit after GSP discovered the need for repairs to the premises' roof and electrical panels.  This is not persuasive.  As the trial court explained, " '[o]ne of the most elemental principles of law is that a written instrument . . . may not be varied by evidence of an oral agreement that contravenes the terms of the written instrument ([] § 1698) and it is error for the court to consider such evidence as the basis for any finding of fact.' (*Bakersfield Laundry Asso. v.*

8

*Rubin* (1955) 131 Cal.App.2d Supp. 862, 865.)" But that is what GSP impermissibly seeks here.[2]

The alleged oral contract contradicts several express provisions of the lease. First, the lease expressly stated it "may be modified only in writing." Moreover, the lease expressly stated: (1) that GSP was "acquiring the Premises in their 'as is, where is, and with all faults' condition" and "required improvements shall be payable solely by [GSP]"; and (2) that "the Premises [were] not in compliance" with state law for the intended uses, yet GSP was "not entitled to reimbursement from [ZK] for making any Alterations or improvements . . . , including any and all costs and expenses . . . , including . . . all electrical, plumbing, mechanical[,] and fire safety equipment and installations." GSP's explanation for the orally agreed-upon rent credit — i.e., to offset the costs of needed repairs — conflicts with these written provisions. This distinguishes *Lacy Mfg. Co. v. Gold Crown Mining Co.* (1942) 52 Cal.App.2d 568, 577 ["There was no attempt to vary the terms of the contract"].

There are other problems with GSP's assertion of an oral contract. For example, GSP fails to allege any facts regarding the consideration ZK received in exchange for the rent credit. (*Piercy v. De Fillipes* (1963) 215 Cal.App.2d 284, 290 [oral agreement abrogating written agreement "must be supported by a sufficient consideration"].) Also, because the rent credit modifies the core subject of the lease — i.e., rent payments in exchange for possession of the premises — the alleged oral agreement is arguably not "naturally" one that would be made collateral to and separate from the written lease. (See *Masterson v. Sine* (1968) 68 Cal.2d 222, 227; *Ayers v.*

---

[2] Subdivision (d) of section 1698 does not help GSP. It merely does not "preclude[] in an appropriate case the application of rules of law concerning . . . oral independent collateral contracts." (§ 1698, subd. (d).)

*Southern P. R. Co.* (1916) 173 Cal. 74, 81; cf. Restatement of Contracts, § 240, subd. (1)(b) [integration does not necessarily invalidate previous oral agreement if there is separate consideration or the agreement "might naturally be made as a separate agreement"].)

For these reasons, the alleged oral contract is not admissible as parol evidence of a rent credit modifying the lease's terms. Because there is no triable dispute of material fact regarding the notice to quit based on unpaid rent, the trial court did not err in granting ZK's motion for summary judgment.

## IV. Late Payment Fee Is Not an Unenforceable Penalty

Because it affects the damages awarded in the judgment, we turn to GSP's contention that the lease's late payment fee is an unenforceable penalty under section 1671, subdivision (b). We disagree.

Whether a contractual liquidated damages provision is an unenforceable penalty is a question of law we review de novo. (*Harbor Island Holdings v. Kim* (2003) 107 Cal.App.4th 790, 794.) Section 1671, subdivision (b) provides that "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."

Our Supreme Court has explained that reasonableness in this context means "[t]he amount set as liquidated damages 'must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.' " (*Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977 (*Ridgley*).) Liquidated damages cannot be a device merely to compel performance in the event of default; the contractual amount

10

must have a " 'proportional relation to the damages which may actually flow from failure to perform under a contract.' " (*Id.* at pp. 977–978.)

Here, the clause in the lease states that GSP shall pay "a one-time late charge equal to 10 [percent] of each such overdue amount or $100, whichever is greater," if rent is overdue by five days or more. The same provision in the lease explains that "[GSP] hereby acknowledges" ZK may incur costs from GSP's late payment, including "processing and accounting charges, and late charges which may be imposed upon [ZK] by any Lender." This is at variance with GSP's contention that "neither party mentioned anything showing any relationship between the rent late fees and any damages." Moreover, whether the parties discussed ZK's anticipated damages is irrelevant to the analysis of the amount's reasonableness or proportionality to ZK's actual damages.

On this record, we find the 10 percent late payment fee to be reasonable under the circumstances at the time of lease's formation. GSP's reliance on *Ridgley*, where a borrower owed the equivalent of six months' interest as a late fee that was triggered by prepayment of the loan's principal, is misplaced; in fact, the court noted the loan's unutilized 10 percent late payment fee to be " 'reasonable.' " (*Ridgley*, *supra*, 17 Cal.4th at p. 979, fn. 4.) *Harbor Island Holdings v. Kim*, *supra*, 107 Cal.App.4th 790, where the underlying lease provided for doubling the rent as a penalty for any breach, is also inapposite.

As the late fee is a reasonable estimate of the losses incurred by ZK, it is enforceable. This is sufficient to entitle ZK to the damages stated in the judgment.

11

## V. GSP's Other Arguments Fail

GSP's unconscionability argument is meritless. The lease's explicit requirement that GSP obtain ZK's approval before subletting the premises does not " ' "shock the conscience." ' " (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246.) This is especially so here, where the lease required ZK not to "unreasonably" withhold, condition, or delay approval to sublet. However, because ZK is entitled to judgment on the 3-day notices to pay or quit, we need not resolve GSP's estoppel argument regarding its sublet of the premises nor whether there are any other disputed facts regarding the remaining notices to quit.

## DISPOSITION

The judgment is affirmed. ZK is entitled to costs. (Cal. Rules of Court, rules 8.278(a)(1), (2).)

DOUGLAS, J.*

We concur:

BROWN, P.J.
GOLDMAN, J.

*ZK Oakland Properties, LLC v. Golden Stream Properties, LLC* (A165450)

---

*Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.