## MURRY v. MERCHANTS SOUTHWEST TRANSFER & STORAGE CO.

No. 14486—Opinion Filed Feb. 5, 1924.

Rehearing Denied April 15, 1924.

**1. Trial—Directing Verdict—Question of Ratification of Agent's Acts.**

Where there is sufficient evidence to go to the jury on the question of ratification of an officer's or agent's unauthorized acts or contract, but it is disputed or is such that different inferences may be reasonably drawn therefrom, the question is one of fact for the jury to determine under proper instructions from the court, and it is error to withdraw the question from them by instruction or direction of verdict. But where the facts are established or undisputed and are unequivocal in character, whether they amount to ratification is a question of law for the court.

**2. Trial—Instructions—Conformity to Issues.**

In determining the scope of its instructions, the court must keep in mind the issues as made by the pleadings in the cause; and the general rule is that all instructions must be confined to those issues and the evidence in support thereof, and that no instruction should be given which tenders an issue that is not supported by the pleadings or which deviates therefrom in any material respect.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; James I. Phelps, Judge.

Action by Thos. F. Murry against the Merchants Southwest Transfer & Storage Company. From a judgment in favor of the defendant, the plaintiff brings error. Reversed.

Walter & Hilprit and Elmer L. Fulton, for plaintiff in error.

Gasper Edwards, for defendant in error.

Opinion by PINKHAM, C. This action was instituted in the district court of Oklahoma county by the plaintiff in error, as plaintiff, against the defendant in error, as defendant, to recover amount of two installments of rent under a lease contract with the defendant.

The parties will be referred to as plaintiff and defendant, as they appeared in the trial court.

This lease contract by its terms leased to the defendant a two-story cement building in Oklahoma City for a term of three years and two days, or from May 1, 1920, until May 3, 1923, for a rental for the entire period of $8,100, payable at the rate of $225 per month, in advance.

It was further provided in the lease that the plaintiff should keep the roof of the building in good condition but should make no further repairs.

This lease was signed by the plaintiff and by the Merchants Southwest Transfer & Storage company, by S. A. Rourke, presi-

dent, and acknowledged, but was not attested, by the secretary nor the seal of the corporation attached.

A copy of the lease was attached to plaintiff's petition, which petition is in the ordinary form and, as stated, seeks to recover for the installment of rent due for the months of February and March, 1922.

For answer defendant filed a general denial and a specific denial of the execution of the lease.

The case was tried to a jury and resulted in a verdict for the defendant, upon which the court rendered judgment. Motion for new trial was duly filed and overruled. The plaintiff appeals.

For reversal of the judgment plaintiff assigns the following specifications of error: (1) The court erred in giving instruction No. 4, to the giving of which instruction the plaintiff at the time duly excepted; (2) the court erred in giving instruction No. 5, to the giving of which instruction the plaintiff at the time duly excepted; (3) the verdict of the jury is wholly unsupported by any evidence and is contrary to law; (4) the court erred in overruling the motion of plaintiff for a new trial.

The questions involved under these assignments of error are discussed by plaintiff in error in his brief under the following propositions: (1) The lease contract sued on was properly executed and is binding on the defendant; (2) if the lease contract was defectively executed or executed by S. A. Rourke without authority the defendant has ratified such act of its president, and having acknowledged the validity of the contract by paying the monthly rental for a period of 21 months is now estopped to question the validity of the contract; (3) there was no eviction and condition of the premises was not such as to justify the refusal to pay rent for the reason the defendant without complaint had paid the rent for a period of 21 months and had never complained of the condition of the building or the roof or notified the plaintiff of any alleged defective condition or of the necessity of repairs.

The lease in question was signed by the president of the defendant corporation but is not attested by the secretary nor is the seal of the corporation affixed thereto.

The defendant company in its answer specifically denied the execution of the lease.

It is contended by counsel for plaintiff in their brief, that there was no compe-

tent evidence to show that the lease contract was executed without authority, and no evidence that it had not been ratified, and that the facts presented a question of law for the court and it was error to leave it to the jury; second, that if there was any evidence tending to show either lack of authority or no ratification the court should have instructed the jury that the burden or proof on this question was on the defendant and that the court erred in giving instruction No. 4.

In the instruction complained of the court told the jury in effect that if there was an unpaid balance due the plaintiff from the defendant for the months of February and March, 1922, the verdict should be for the plaintiff; that if S. A. Rourke entered into the lease in question without authority from the defendant corporation, either express or implied, and without its knowledge, then the defendant would not be liable for the rent for any time the property was not occupied by the defendant, and that if the defendant company never occupied the premises then the verdict should be for the defendant; that if the defendant company, by its duly authorized officers, entered into this lease then the verdict should be for the plaintiff, if there is an unpaid balance due on the lease; that although Mr. Rourke may not have had authority to have entered into the contract in question, but if the defendant company took charge of the property and paid the portion of the rental thereon as shown by the evidence, amounting to about $4,700, then the comapny would be estopped from denying the liability or authority of Mr. Rourke from entering into the lease and the verdict should be for the plaintiff in whatever amount found to be due; that if the company knew of this arrangement, although the lease may not have been entered into in strict legal form, and accepted the benefits and paid rent to the amount of $4,700, then the law would presume that they had ratified whatever contract or arrangement Mr. Rourke had made, although he may not have been expressly authorized to enter into the lease in the first instance.

There is evidence in the record that the defendant paid 21 monthly installments on this contract without protest or complaint of any kind; that the payments were made by check signed "Merchants Southwest Transfer & Storage Co., by S. A. Rourke, President," and that these checks were all paid.

There was no objection made to this testimony on the part of defendant or its counsel.

There is also testimony in the record to the effect that the board of directors of the defendant corporation never made the said S. A. Rourke, who signed the lease contract, its manager; that it never authorized him to lease property for it, but that he did lease property in his individual capacity; that the defendant company never knew anything about the lease in question until the commencement of this action. One of the witnesses, a director of the defendant company, testified that "the defendant company had never occupied this building or even taken any interest. The board of directors didn't know that this purported lease was in existence until this suit was brought."

An examination of the record discloses sufficient evidence to justify the giving of the instruction criticized. In other words, whether or not the defendant ratified the act of its president in entering into the lease contract involved was a question of fact properly submitted to the jury.

"Where there is sufficient evidence to go to the jury on the question of ratification of an officer's or agent's unauthorized acts or contract, but it is disputed or is such that different inferences may be reasonably drawn therefrom the question is one of fact for the jury to determine under proper instructions from the court and it is error to withdraw the question from them by instruction or direction of verdict, But where the facts are established or undisputed and are unequivocal in character, whether they amount to ratification is a question of law for the court." 14a C. J. 412

In view of this state of the record we think the instruction complained of fairly submitted the issue of whether the said S. A. Rourke had authority to enter into the lease in question, and that if he did not have such authority in the first instance whether under the facts and circumstances surrounding the case the defendant company ratified his acts.

Counsel for defendant in error says in his brief that estoppel or ratification must be affirmatively pleaded. It is, however, clear from an examination of the evidence on this branch of the case that it was in fact tried on the question of ratification and estoppel and that the court instructed the jury on that question without objection on the part of the defendant.

"While as a general rule estoppel or waiver must be pleaded, failure to do so may be waived by plaintiff by proceeding with the trial without objection as though the defense relied on had been pleaded." First State Bank of Texola v. Terrell, 44 Okla. 719, 145 Pac. 1140.

It is next contended that the court erred in giving instruction No. 5. That instruction is as follows:

"If you find and believe, gentlemen, from the evidence, that under the terms of the contract Mr. Murry, plaintiff in this case, was obligated to keep the roof in good condition and that he failed in that respect and his failure to keep the roof in proper condition resulted in the property being useless to the defendant, then the plaintiff would not be entitled to recover in this action."

The lease in question provided that "the first party agrees to keep the roof in good condition but to make no further improvements or repairs."

The instruction complained of was given, it appears, upon the theory of a constructive eviction.

The general rule relating to a constructive eviction is that any disturbance of the tenant's possession by the landlord whereby the premises are rendered unfit or unsuitable for occupany, in whole or in part, for the purposes for which they were leased, amounts to a constructive eviciton, if the tenant so elects and surrenders his possession. 16 R. C. L. 686. The rent is suspended by an eviction because it is plainly unjust that the landlord should be permitted to collect it, while by his own act he deprives the tenant of the possession which is the consideration for it. Holden v. Tidwell, 37 Okla. 553, 133 Pac. 54.

We think the doctrine of constructive eviction has no application in this case in view of the pleadings and the undisputed facts disclosed by the record.

The defendant failed to pay the rent, not because the roof needed repairs, but for the reason, as it is contended, that it did not authorize its president to lease the building.

The evidence on the part of the defendant was that the board of directors did not know of the existence of this lease until the suit was brought against it for the rent of February and March, and further, that it had never occupied the building at any time.

It is difficult to understand how it would be possible for a tenant to be evicted by a construction of law from a building that he had never occupied or used.

Furthermore, there was no testimony that the defendant abandoned the building or declined to occupy it on account of the condition of the roof.

In the case of Holmes v. Wood, 88 Mich. 435, it is said in the syllabus:

"Notice must be given of a defense of non-tenantability in a suit to recover rent for the use of a dwelling house. Such a defense is not made out where the lessor had no notice that the house was claimed to be untenant-able and the tenant assigned other reasons for leaving the premises in his notice of re-moval, and, while testifying to the presence of bad odors arising from the alleged want of repairs, did not testify that he left the house on that account."

It is conceded that no notice was ever giv-en the plaintiff that the roof needed repairs. Section 7371, Comp. Stat. 1921, provides:

"If within a reasonable time after notice to the lessor of dilapidations which he ought to repair, he neglects to do so, the lessee may repair the same himself and deduct the expense of such repairs from the rent or otherwise recover it from the lessor; or, the lessees may vacate the premises in which case he shall be discharged from further pay-ment of rent or performance of other con-ditions."

There is no evidence in the record showing the condition of the building in question at the time the defendant ceased paying rent in February and March, 1922. The jury were permitted to view the building to discover its condition at the time of the trial, which was in October, 1922, but there is no evidence that the premises were in a bad condition either at the time of the execution of the lease or nearly two years later when the defendant ceased paying rent.

The instruction complained of, in effect, told the jury as a matter of law, that the defendant would be justified in not paying the rent sued for if it found from the evi-dence that the plaintiff failed to keep the roof of the building in proper condition, and that if such failure resulted in the prop-erty being useless to the defendant the plaintiff could not recover.

This instruction was not responsive to the issues and was susceptible to the construction that even though the jury might believe from the evidence that the defendant had ratified the act of its president in leasing the premises, still it would not be liable for the rent if the building was useless to the defendant on account of plaintiff's failure to keep the roof in repair.

"In determining the scope of its instruc-tions, the court must keep in mind the issues as made by the pleadings in the cause; and the general rule is that all instructions must be confined to those issues and the evidence in support thereof, and that no instruction should be given which tenders an issue that is not supported by the pleadings or which

deviates therefrom in any material respect." 14 R. C. L. 784.

In any view of the case we think the in-struction complained of was erroneous.

The decisive question in the case made by pleadings and the evidence was whether or not a rental contract existed between the plaintiff and the defendant. The question of repairs of the roof had no necessary connec-tion with the issue joined.

We are therefore of the opinion that the giving of the instruction No. 5 was prejudic-ial to the rights of the plaintiff.

For the reasons stated, we think the judg-ment of the trial court should be reversed and the cause remanded for a new trial.

By the Court: It is so ordered.